UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Joe Thornblad,** | Civil No. 07-1857 (RHK/SRN) |
| Petitioner, | |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| **Barbara Berg Windels,** | |
| Respondent. | |

Joe Thornblad, <u>pro se</u>, 2100 Sheppard Drive, St. Peter, Minnesota, 56082

Robin Christopher Vue-Benson, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St. Paul, Minnesota, 55101, for Respondent

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned matter comes before the undersigned United States Magistrate Judge on Petitioner Joe Thornblad's Amended Petition for Writ of Habeas Corpus (Doc. No. 5). This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that the petition be denied and that the case be dismissed with prejudice.

**I.    BACKGROUND**

Petitioner is presently a patient at the Minnesota Security Hospital (MSH) in St. Peter, Minnesota. In 1996, Petitioner was committed as a mentally ill and dangerous person after he threatened to kill a state representative and assaulted an elderly woman in a restaurant. <u>See</u> <u>In re Joseph Donald Thornblad</u>, No. C0-96-1793, 1996 WL 745221, at *1 (Minn. Ct. App. Dec. 31, 1996). The Renville County District Court found that Petitioner suffered from paranoid schizophrenia, which caused him to be a danger to others, and ordered him civilly committed for

an indeterminate length of time.

      Petitioner has a lengthy history of violent and unlawful conduct. In 1984, he assaulted a police officer. In 1988, he assaulted two Hennepin County District Court judges and caused one of the judges to fall down an escalator and break his arm. While incarcerated at the Minnesota Correctional Facility (MCF) in Stillwater in 1993, he stabbed a prison guard's hand with an ink pen. In 1999 and 2000, Petitioner offered money to other patients to assault the MSH ombudsman. Petitioner has also served time at the MCF in Oak Park Heights and at various county facilities for convictions of theft, disorderly conduct, receiving and concealing stolen goods, and burglary.

      Petitioner's psychiatric history dates back to 1989, and he has been hospitalized for psychiatric conditions at least eight times. Two psychiatrists testified at Petitioner's commitment hearing in 1996 that Petitioner suffered from paranoid schizophrenia. Medical records reveal that he has no remorse for his behavior and that he glorifies his assaults. Petitioner has manifested symptoms of psychosis such as extreme suspiciousness, disorganized thinking, and an incessant flow of speech. He has displayed delusions of power over the government and the legal system. Although Petitioner takes antipsychotic medications, he has a poor understanding of his illness and the need for such medications. In 2004, Petitioner had a manic episode and interfered with another patient's treatment. In January 2005, Petitioner requested and received a transfer to a less-structured program at MSH, but his behavior so interfered with other patients' treatment that he had to be returned to the most secure MSH program.

      In 2005, Petitioner filed a petition with the Minnesota Department of Human Services,

seeking a transfer from MSH to another facility, or in the alternative, a discharge from commitment. A Special Review Board (SRB) recommended that the petition be denied, and the Commissioner of Human Services ("Commissioner") denied the petition on October 26, 2005. Petitioner then sought review by the Judicial Appeal Panel ("Appeal Panel").

In April 2006, Dr. Peter Meyers conducted a psychological evaluation of Petitioner and determined that he met the criteria for psychopathy, specifically, schizoaffective disorder, bipolar type. He found that Petitioner exhibited manic symptoms such as grandiose ideas, erratic speech, anger outbursts, irritability, and distractability. Dr. Meyers believed that the success of Petitioner's treatment depended on his compliance with his medication regime. Considering Petitioner's symptoms and behavior, Dr. Meyers did not advise that Petitioner be transferred to a less secure setting or discharged.

The Appeal Panel held a hearing on the petition for a transfer or discharge in June 2006. Petitioner testified on his own behalf and presented testimony from two witnesses – fellow patients at MSH who testified that Petitioner had saved them from choking. Dr. Meyers' report was also introduced into evidence. The Appeal Panel dismissed Petitioner's appeal at the conclusion of his presentation of evidence because he had not produced any evidence supporting his request to be discharged from commitment. Petitioner appealed the Appeal Panel's decision to the Minnesota Court of Appeals, which affirmed the decision on January 30, 2007. Thornblad v. Goodno, No. A06-1620, 2007 WL 236236, at *3 (Minn. Ct. App. Jan. 30, 2007). The court specifically noted that Petitioner had not raised any constitutional issues before the Appeal Panel, and the court therefore deemed any such arguments waived on appeal. Id. at *5. Petitioner sought review from the Minnesota Supreme Court, which declined his request for

review.

Petitioner commenced this proceeding in federal court on April 11, 2007, and named Assistant Minnesota Attorney General Barbara Berg Windels as the Respondent. This Court struck Petitioner's pleading because he did not submit his habeas application on the form prescribed for use in this District, and the Court gave Petitioner thirty days to file an amended petition, which he timely filed.

In the amended petition, Petitioner states that he is attacking the 1996 commitment decision. Petitioner also alleges that he argued to the SRB that he was no longer dangerous, and that he appealed this decision to the Appeal Panel. In the section of the petition for alleging particular grounds for habeas relief, Petitioner avers that the United States Supreme Court has held that individuals who are no longer dangerous must be released. In the response to the petition, Respondent asks the Court to dismiss the petition for three reasons: (1) the petition names an improper respondent; (2) the petition does not identify any factual or legal bases for Petitioner's claims; and (3) Petitioner did not exhaust his state court remedies.

## II.    DISCUSSION

Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Anti-Terrorism and Effective Death Penalty Act (AEDPA) limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

The United States Supreme Court has explained the meanings of the "contrary to" and "unreasonable application" clauses in Williams v. Taylor, 529 U.S. 362 (2000). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." Id. at 412-13. A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411).

In addition, when reviewing a state court decision, "a federal court . . . presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000); 28 U.S.C. § 2254(e)(1). This deference applies to factual determinations made by state trial courts and state appellate courts. Sumner v. Mata, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Whitehead v. Dormire, 340 F.3d 532, 539 (8th Cir. 2003).

Respondent has raised three credible challenges to the petition. The Court finds, however, that it would be most efficient and expedient to address the petition on the merits, for the following reasons. First, although it is true that Petitioner has named an improper

5

Respondent,[1] the Court would typically grant Petitioner leave to file an amended petition naming the appropriate respondent. Moreover, even if the Court were to recommend dismissal on this basis, such dismissal would be without prejudice, and Petitioner could simply file a new petition naming the correct respondent. Second, as to whether the petition sufficiently alleges the factual and legal bases for Petitioner's claim, the Court is consigned to construe pro se pleadings liberally. In this light, the petition adequately, albeit minimally, alleges a cognizable claim for relief. Petitioner alleges that he is no longer dangerous, and therefore, that he must be released in accordance with Supreme Court precedent. The Court will accept this allegation as a sufficient basis for habeas relief. Finally, regarding the exhaustion issue, the Court may deny a § 2254 petition on the merits notwithstanding a petitioner's failure to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(2). This is particularly appropriate where, as here, the merits "are simple and plain." See Thornblad v. Olson, 952 F.2d 1037, 1038 (8th Cir. 1992) (addressing a habeas petition by the same Petitioner, which challenged a previous commitment order, on the merits rather than on procedural grounds).

To the extent the petition challenges the 1996 commitment order, it runs afoul of the one-year limitations period of 28 U.S.C. § 2244(d)(1). The Court will therefore give Petitioner the benefit of the doubt and presume that he is challenging the 2005 decision of the Commissioner

---

[1] A habeas petition must "name the person who has custody over him and by virtue of what claim or authority, if known." 28 U.S.C. § 2242. "[T]here is generally only one proper respondent to a given prisoner's habeas petition. This custodian . . . is 'the person' with the ability to produce the prisoner's body before the habeas court." Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004) (citation omitted). When a habeas petitioner challenges the constitutionality of his physical confinement, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Id. at 435.

and the 2006 decision of the Appeal Panel.

As previously stated, federal habeas relief is available only if a state court decision was antithetical to, or unreasonably applied, clearly established Supreme Court precedent, or if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1), (2). Petitioner asserts that the Supreme Court has held that individuals who are no longer dangerous must be released. The Court presumes he is relying on O'Connor v. Donaldson, 422 U.S. 563 (1975), which he raised for the first time on appeal to the Minnesota Court of Appeals. O'Connor held that "a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." Id. at 576. The patient in O'Connor had never been dangerous to himself or to others. Id. at 568, 573. Here, on the other hand, the State's decision to continue Petitioner's commitment was based on a finding that he was dangerous, as demonstrated both by medical evidence and numerous instances of violent behavior toward others. In its decision, the State did not reach a conclusion of law antithetical to one reached by the Supreme Court, nor was the State faced with a set of facts materially indistinguishable from Petitioner's, nor did the State unreasonably apply O'Connor to Petitioner's case. Thus, the State's decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

The sole remaining possible basis for habeas relief is whether Petitioner in fact continued to be dangerous. To obtain habeas relief on this basis, Petitioner must show by clear and convincing evidence that the State made an unreasonable determination of the facts in his case.

Minnesota Statute § 253B.18 governs the procedure for seeking a discharge from

commitment as a mentally ill and dangerous person.  The patient initiates the procedure by filing a petition for discharge, and the SRB makes a recommendation to the Commissioner.  Minn. Stat. § 253B.18, subds. 4c, 5, 15.  The patient may not be discharged unless the Commissioner determines that the patient can make "an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of inpatient treatment and supervision."  Id. § 253B.18, subd. 15.  If the Commissioner denies the petition for discharge, the patient may appeal to the Appeal Panel, which holds a de novo evidentiary hearing.  Minn. Stat. § 253B.19, subds. 1, 2.

In the present case, there is ample evidence supporting the findings of the Commissioner and the Appeal Panel that Petitioner is not able to adjust to society, that he remains a danger to the public, and that he requires continuing treatment and supervision.  In particular, Dr. Meyers opined that Petitioner exhibits paranoia, mood deregulation, grandiose ideas, erratic speech, and outbursts of anger.  He diagnosed Petitioner with schizoaffective disorder, bipolar type, and indicated that Petitioner's treatment success is dependent on compliance with his medication regime and treatment in a structured environment.  Petitioner has denied, and demonstrated no remorse for, his past violent behavior.  He has continued to threaten government officials and has interfered with the treatment of other patients.  Petitioner has not rebutted the State's factual determinations with clear and convincing evidence.  The testimony of two fellow patients that Petitioner saved them from choking does not demonstrate that he can adjust to society, that he is no longer a danger to the public, or that he no longer requires treatment and supervision.  Thus, on habeas review, the Court must defer to the factual determinations made by the Commissioner and the Appeal Panel.

Although the habeas petition does not challenge the Commissioner's decision that Petitioner is not entitled to transfer to a non-secure facility, the Court will briefly address the issue, in the interest of comprehensiveness.  In evaluating a petition for transfer, the Commissioner considers the patient's clinical progress and treatment needs, the need to treat the patient in a secure environment, the need for an institutionalized setting, the type of facility that best meets the patient's needs, and whether the public's safety would be compromised by a transfer.  Minn. Stat. § 253B.18, subd. 6.  In Petitioner's case, abundant evidence supports the factual findings that Petitioner has not made sufficient clinical progress, that his treatment needs cannot be met in a less secure setting, that he needs treatment in an institutionalized setting, that MSH is the best facility for his treatment needs, and that a transfer to an open hospital could not be accomplished without risk to public safety.  Petitioner has not rebutted these factual determinations with clear and convincing evidence.  Accordingly, habeas relief is not available for the State's decision not to transfer Petitioner to a less secure setting.

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Joe Thornblad's Amended Petition for Writ of Habeas Corpus (Doc. No. 5) be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

Dated: March 3, 2008

       s/ Susan Richard Nelson
      SUSAN RICHARD NELSON
      United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 18, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of

those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.